UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Transcontinental Insurance Company,

Plaintiff,

v.

Knutson Construction Services,
Michael Curry Companies, Inc.,
Becker & Becker Stone Company,
Westfield Insurance Company,
St. Paul Insurance Company,
Cincinnati Insurance Company, and
Doe Defendants 1-10.

Defendants.

Civil No. 05-2206 (JMR/FLN)

**REPORT AND
RECOMMENDATION**

_____

Eric Lynch and Paul Smith for Plaintiff
Dyanna Street for Knutson Contruction
Deborah Eckland and Brian Sande for Becker & Becker Stone
Patrick Larkin for Westfield Insurance Co.
Stacy Ertz for St. Paul Companies
Cheryl Hanson for Cincinnati Insurance Co.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 28,

2006, on Becker & Becker Stone Co.'s Motion for Partial Summary Judgment [#48] and Cincinnati

Insurance Co.'s Motion for Partial Summary Judgment [#56].  The matter was referred to the

undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For

the reasons which follow, this Court recommends that Becker & Becker Stone Co.'s Motion for

Partial Summary Judgment [#48] and Cincinnati Insurance Co.'s Motion for Partial Summary

Judgment [#56] be **GRANTED**.

## I.    BACKGROUND

Transcontinental Insurance Co. (hereinafter "TIC") filed the instant declaratory judgment

action against Knutson Construction Services (hereinafter "Knutson"), Michael Curry Companies,

Inc., Becker & Becker Stone Company (hereinafter "Becker"), Westfield Insurance Company, St. Paul Insurance Company, Cincinnati Insurance Co. (hereinafter "Cincinnati"), and Doe Defendants 1-10. TIC seeks a declaratory judgment that TIC does not have a duty to indemnify Knutson, its insured. TIC claims that, if it is determined that TIC has an obligation to indemnify its insured, Knutson, that it may then be entitled to equitable contribution, contribution, or subrogation from Becker, Cincinnati and the other Defendants. Defendants Becker and Cincinnati bring the instant motion seeking dismissal of TIC's claim against them.

The declaratory judgment action arises out of an insurance coverage dispute between TIC and its insured, Knutson, regarding construction work that Knutson performed at St. Mary's Hospital. St. Mary's Hospital is a Mayo Medical Center hospital in Rochester, Minnesota. Knutson was the general contractor for the construction work, which required Knutson to build a large stone entrance for the Mary Brigh Facility at St. Mary's Hospital (hereinafter "project"). (Affidavit of Daniel J. Singel (hereinafter "Singel Aff.") Ex. 1.) Knutson contracted with Becker to provide Indiana limestone for the project. (Singel Aff. Ex. 2; Ex. 3 ¶ 2.) Becker contracted with Knutson to supply the limestone in conformity with the specifications given to Becker by HDR, the architect on the project. (Singel Aff. Ex. 3 ¶ 2.) Becker then retained the engineering firm IIW to "prepare design and installation specifications for the stone pursuant to HDR's specifications." (Singel Aff. Ex. 3 ¶ 4.) Knutson was ultimately responsible for the installation of the stone at the project. (Singel Aff. Ex. 3 ¶ 2.)

On December 29, 1994, Knutson approved the specifications submitted by IIW, and Becker began shipping stone to the jobsite. (Singel Aff. Ex. 3 ¶ 5.) Becker's last shipment of stone occurred in November of 1995. (Singel Aff. Ex. 3 ¶ 5.) Knutson paid Becker for all the stone

products Becker supplied to Knutson for the project.  (Singel Aff. Ex. 3 ¶ 5.)

TIC issued a commercial general liability policy to Knutson which was effective from June 1, 2000 through June 1, 2001.  (Compl. ¶ 13.)  In 2001, the Mayo Clinic discovered alleged defects in the stone work of the project.   In September of 2001, Becker was notified that there were problems with the stone work done at the Mary Brigh Center, specifically that "there was some spalling and chipping on the stone work." (Singel Aff. Ex. 3 ¶ 6.) On October 9, 2001, Fred Becker, the president and sole owner of Becker, met with representatives of HDR, Knutson and the Mayo Clinic at the Mary Brigh Center to assess the problems with the stone work and to determine what repairs were required.  (Singel Aff. Ex. 3 ¶ 6; Ex. 7.)

After the meeting on October 9, 2001, HDR, Knutson, and the Mayo Medical Center each retained the services of experts to analyze the damaged stone and determine what repairs Knutson would be required to make.  (Singel Aff. Ex. 8-13.)  Fred Becker testified that he "did not hire an expert or investigate the problems at the Mary Brigh Center in 2001 because no one indicated the stone Becker supplied had anything to do with the problems addressed.  All indications were that the problems had to do with Knutson's installation work."  (Singel Aff. Ex. 3 ¶ 10.)

Knutson contracted with Becker to provide additional stone for the repairs, and Knutson paid Becker for the additional stone that Becker provided.  (Singel Aff. Ex. 3 ¶ 9.)  Knutson began the necessary repairs in July 2003 and completed the repairs sometime between late 2003 and fall 2004. On November 10, 2003, Knutson provided TIC with a claim seeking reimbursement for the costs of the investigation and remediation work performed at the Mary Brigh Center.  (Compl. ¶¶ 31, 33.) TIC denied coverage and subsequently filed this declaratory action on September 22, 2005.  TIC has not paid Knutson, its insured, any amount with respect to Knutson's claim seeking reimbursement.

(Compl. ¶ 33.) Becker does not currently have, nor has it ever had, any contractual relationship with TIC. (Singel Aff. Ex. 3 ¶ 11.)

Cincinnati insured Becker under a commercial general liability policy from October 22, 1998 through October 22, 2004. (Affidavit of Jack Victory (hereinafter Victory Aff.) ¶ 5.) Cincinnati also insured Becker under a commercial umbrella liability policy from October 22, 1998 through October 22, 2004. (Victory Aff. ¶ 6.) Knutson was not an additional insured under either of Becker's policies with Cincinnati for the work Becker performed on the project in 1994. (Victory Aff. ¶ 7.)

Becker and Cincinnati now move for partial summary judgment against TIC. Becker argues, *inter alia*, that TIC's claim against Becker must be dismissed because TIC does not have standing to sue Becker. Becker's motion is styled as a partial summary judgment motion; however, Becker's supporting memorandum requests that its motion be granted and that "TIC's claim against Becker [be] dismissed." (Def.'s Mem. at 22.) In its supporting memorandum Becker states that, although TIC's complaint asserts a right of contribution or subrogation, "TIC's claim against Becker is for subrogation." (Def.'s Mem. at 11.)[1] Therefore, it appears that Becker is moving for partial summary judgment on Count VII of TIC's complaint. However, in Count V, TIC alleges that

> [u]pon information and belief, Knutson was added to Becker's commercial general liability insurance as an additional insured pursuant to the subcontract between those parties . . . Based [u]pon [the policy language of the insurance policy between TIC and Knutson] the [TIC] Policy would be excess, even assuming coverage existed for this loss under the [TIC] Policy, while Becker's insurance (issued by Westfield, Cincinnati and other insurers), would apply to this loss in primary and non-

---

[1] In Count VII, TIC alleges that "[i]f it is determined that [TIC] has an obligation to indemnify Knutson for this loss, then [TIC] is entitled to equitable contribution, contribution, subrogation or other recoveries, however denominated, from all Defendants . . . who may be responsible in whole, or in part, for the subject loss." (Compl. ¶ 70.)

4

contributory fashion, until exhausted.

(Compl. ¶¶ 60-61.)   Count V is not addressed in Becker's motion for partial summary judgment and, therefore, to the extent that TIC alleges a claim against Becker in Count V, that claim will not be addressed by the Court at this time.

Cincinnati argues that, since Cincinnati did not insure Becker until 1998, Knutson was not an additional insured under Becker's insurance policies with Cincinnati for the work performed on the project in 1994 and hence TIC has no direct claim against Cincinnati.   Therefore, Cincinnati argues that TIC's claims against it are based entirely on Cincinnati's relationship with Becker, and Cincinnati joins in Becker's motion and moves for partial summary judgment on the same grounds asserted by Becker.

## II.    STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986).  Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23.  For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party.  Id. at 255.  Thus, summary judgment is appropriate when the court

has viewed the facts and the inferences drawn from those facts, in the light most favorable to the

non-moving party, and found no triable issue.  See Southwall Technologies, Inc. v. Cardinal IG Co.,

54 F.3d 1570, 1575 (Fed. Cir. 1995).

### III.    LEGAL ANALYSIS

#### A.    TIC Does Not Have Standing To Sue Becker in a Declaratory Judgment Action on a Theory of Subrogation.

The United States Constitution confers jurisdiction upon the federal courts to hear actual

cases and controversies.  U.S. CONST. art. III, § 2, cl. 1.  The United States Supreme Court has stated

numerous times that "[a]llegations of possible future injury do not satisfy the requirements of

[Article] III."  Whitmore v. Arkansas, 495 U.S. 149, 158 (1990).  In order for any case in the federal

courts to proceed, " [a] party must satisfy constitutional standing requirements."  County of Mille

Lacs v. Benjamin, 361 F.3d 460, 463 (8th Cir.2004).  The United States Supreme Court held that

the

> 'irreducible constitutional minimum' of standing requires: (1) that the plaintiff have
> suffered an 'injury in fact'-an invasion of a judicially cognizable interest which is (a)
> concrete and particularized and (b) actual or imminent, not conjectural or
> hypothetical; (2) that there be a causal connection between the injury and the conduct
> complained of-the injury must be fairly traceable to the challenged action of the
> defendant, and not the result of the independent action of some third party not before
> the court; and (3) that it be likely, as opposed to merely speculative, that the injury
> will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,

560-61 (1992)).  The moving party must "clearly and specifically set forth facts sufficient to satisfy

the[ ] [Article] III standing requirements."  Whitmore, 495 U.S. at 155; see also Steel Co. v. Citizens

for a Better Environment, 523 U.S. 83, 103-04 (1998) ("[T]he party invoking federal jurisdiction

bears  the  burden  of  establishing  [the]  existence  [of  the  Article  III  case  or  controversy

6

requirement.]").   Furthermore, "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing."  Whitmore, 495 U.S. at 155-56.

28 U.S.C. §2201, the Declaratory Judgment Act, states that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."   28 U.S.C. §2201.  A declaratory judgment action is a different legal mechanism than a normal case or controversy that is brought before the federal courts, and "[t]he essential distinction between a declaratory judgment action and an action seeking other relief is that in the former no actual wrong need have been committed or loss have occurred in order to sustain the action."  Horne v. Firemen's Ret. Sys. of St. Louis, 69 F.3d 233, 236 (8th Cir. 1995) (quoting United States v. Fisher-Otis Co., 496 F.2d 1146, 1151 (10th Cir.1974)).   However, "[t]he controversy requirement of the Declaratory Judgment Act is synonymous with that of Article III of the Constitution." Carson v. Pierce, 719 F.2d 931, 933 (8th Cir.1983) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937); Cass County v. United States, 570 F.2d 737, 739 (8th Cir.1978)).  Therefore, although the timing of the declaratory judgment action is different than other civil actions seeking relief in the federal courts, in that "no actual wrong need have been committed or loss have occurred in order to sustain the action," the moving party must still satisfy the controversy requirement of Article III; that is, the moving party must establish that there is (1) an injury in fact; (2) a causal connection between that injury and the conduct complained of; and (3) that it is likely that the injury will be redressed by a favorable decision.  Horne v. Firemen's Ret. Sys. of St. Louis, 69 F.3d 233, 236 (8th Cir. 1995) (quoting United States v. Fisher-Otis Co., 496 F.2d 1146, 1151 (10th Cir.1974)); see also Bennett v. Spear, 520 U.S. 154, 167 (1997).

In the present case, TIC cannot establish that it possesses adequate standing to prosecute the present action against Becker.  In its declaratory judgment complaint, TIC alleges that "[*i*]*f* it is determined that [TIC] has an obligation to indemnify Knutson . . . *then* TIC is entitled to equitable contribution, contribution, subrogation or other recoveries . . . from all Defendants." (Compl. ¶ 70.) (emphasis added).

The Minnesota Supreme Court held that "[c]ontribution is the appropriate remedy where there is common liability among tortfeasors, and a claim for contribution does not accrue until the person entitled to the contribution has sustained damage by paying more than his fair share of the obligation."  Hermeling v. Minnesota Fire & Casualty Co., 548 N.W.2d 270, 273, n.1 (Minn.1996), *overruled on other grounds by* Oanes v. Allstate Ins. Co., 617 N.W.2d 401 (Minn.2000).  TIC does not have a claim for contribution against Becker.  Contribution is only an appropriate remedy where there is "common liability among tortfeasors."  Id. at 273, n.1.  TIC has not shown how common liability exists between TIC and Becker.  There is no "common liability" among TIC and Becker, nor are TIC and Becker joint tortfeasors.  Therefore, if TIC does have a claim against Becker, that claim would be one for subrogation.

In contrast, a claim for subrogation is based on "'the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer.'"  Id. (quoting 16 George J. Couch, Couch Cyclopedia of Insurance Law § 61:1 (2d ed. 1983)).  In a claim for subrogation, "[a] subrogee has no greater rights than those of the subrogor . . . [and] [t]he subrogee merely steps into the shoes of the subrogor."  Id. at 273.  The Minnesota Supreme Court noted that "[t]he right of subrogation remains inchoate until such time as the subrogee makes a payment . . . The cause of action in subrogation therefore accrues

8

prior to payment, but is not ripe for adjudication until payment is made by the subrogee." Id. at 273-74.  In other words, "[s]ubrogation is a limited right that comes into existence only after the insurer has paid benefits to its insured."  Behrens v. American Family Mutual Ins. Co., 520 N.W.2d 763, 767 (Minn. Ct. App. 1994) (citing Schmidt v. Clothier, 338 N.W.2d 256, 261-62 (Minn.1983)).

In the present case, TIC, the insurer, has not paid any benefits to Knutson, its insured, regarding Knutson's claim.  Since "[s]ubrogation is a limited right that comes into existence only after the insurer has paid benefits to its insured," TIC does not presently have a claim for subrogation against Becker.  Id.  Since TIC has not paid any benefits to Knutson, TIC cannot allege a claim for subrogation against Becker, because a claim for subrogation is based on "'the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer.'" Hermeling, 548 N.W.2d at 273 (quoting 16 George J. Couch, Couch Cyclopedia of Insurance Law § 61:1 (2d ed. 1983)).

Since TIC cannot presently allege a claim for subrogation against Becker because TIC has not paid any benefits to its insured, Knutson, TIC cannot establish that it has suffered an injury in fact in order to sufficiently establish standing in the present case.  In order to establish standing, a plaintiff must show that the plaintiff has "suffered an injury in fact-an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Bennett, 520 U.S. at 167 (quotations omitted).  In the present case, TIC cannot establish that it suffered an injury in fact.  TIC's right to subrogation does not yet exist, because TIC has not paid Knutson any benefits regarding its claim.  Therefore, TIC cannot establish that it has suffered "an invasion of a judicially cognizable interest which is (a) concrete and particularized." Id.  Furthermore, TIC cannot show that it suffered "an invasion of a judicially

cognizable interest which is . . . (b) actual or imminent, not conjectural or hypothetical." Id. TIC initiated the instant declaratory judgment action in order to determine whether it owes Knutson any benefits under the policy. TIC is not at imminent risk of paying Knutson, nor has TIC actually paid Knutson. In fact, at this stage of the litigation, TIC's claim of subrogation against Becker is hypothetical. In its complaint, TIC alleges that "[*i*]*f* it is determined that [TIC] has an obligation to indemnify Knutson . . . *then* TIC is entitled to equitable contribution, contribution, subrogation or other recoveries . . . from all Defendants." (Compl. ¶ 70.) (emphasis added). Only after the Court determines that TIC owes money to Knutson under the policy will a valid declaratory judgment action based on the subrogation claim against Becker be proper. If the Court determines that TIC is not liable to Knutson under the policy, then TIC's subrogation claim against Becker will never arise.

TIC cannot establish that it has "suffered an injury in fact-an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Bennett, 520 U.S. at 167 (quotations omitted). TIC's judicially cognizable interest, i.e. TIC's subrogation claim against Becker, is merely conjectural and hypothetical at this point of the litigation. TIC's subrogation claim is dependent on whether TIC is held to be liable to Knutson under the policy, and therefore TIC's subrogation claim is merely hypothetical at this point, because TIC has not yet been required to confer any benefits to Knutson under the policy. Since TIC's subrogation claim against Becker is hypothetical at this point, TIC cannot sufficiently establish an injury in fact and TIC does not have standing to initiate this claim against Becker. Therefore, Becker's motion for partial summary judgment be granted and Count VII be dismissed without prejudice as to Becker.

    **B.**    **TIC Does Not Have A Direct Claim Against Cincinnati, and Since TIC Does Not Have Standing to Sue Becker, Cincinnati's Motion For Partial Summary Judgment Must Be Granted.**

In Count V of its complaint for declaratory relief, TIC states

> [u]pon information and belief, Knutson was added to Becker's commercial general liability insurance as an additional insured pursuant to the subcontract between those parties . . . Based [u]pon [the policy language of the insurance policy between TIC and Knutson] the [TIC] Policy would be excess, even assuming coverage existed for this loss under the [TIC] Policy, while Becker's insurance (issued by Westfield, Cincinnati and other insurers), would apply to this loss in primary and non-contributory fashion, until exhausted.

(Compl. ¶¶ 60-61.) However, Becker did not become an insured of Cincinnati until 1998, four years after Becker entered into the subcontract with Knutson on August 11, 1994. (Victory Aff. ¶¶ 3-4.) Knutson was not an additional insured under Becker's commercial general liability policy with Cincinnati, nor was Knutson an additional insured under Becker's commercial umbrella liability policy with Cincinnati for the work Becker performed on the project in 1994. (Victory Aff. ¶ 7.) Therefore, there is no genuine issue of material fact as to the applicability of Count V to Cincinnati, and TIC does not have a direct claim against Cincinnati.

Count VII of TIC's complaint states that "[i]f it is determined that [TIC] has an obligation to indemnify Knutson . . . then [TIC] is entitled to equitable contribution, contribution, subrogation or other recoveries . . . from all Defendants." (Compl. ¶ 70.) However, TIC states in its memorandum that its case against Cincinnati is "about indemnity obligations." (Pl.'s Mem. in Opp. at 3-4.) Indemnity "arises out of a contractual relationship, either express or implied by law, which required one party to reimburse the other entirely." Hermeling, 548 N.W.2d at 273 n.1. Furthermore, "an indemnity claim by an insurer accrues when the party seeking indemnification has made payment to the injured person . . . [a] claim for . . . indemnity does not accrue . . . at the time

11

of the commission of the tort, but at the time of the payment of the underlying claim." Id. "[I]n Minnesota, it is a longstanding common-law rule that courts will not allow third parties to maintain a direct action against an insurer until the third party has a judgment against the insured." Camacho v. Todd and Leiser Homes, 706 N.W.2d 49, 56 (Minn.2005).   Since "insurance contracts in Minnesota are contracts of indemnity, the plaintiff must obtain a judgment against the insured on the issue of liability in order to reach the . . . liability insurer and the insurance proceeds . . . If the insured tortfeasor is dismissed from the action, the lawsuit fails."  Drake v. Ryan, 514 N.W.2d 785, 787-88 (Minn.1994).

Similar to its subrogation claim against Becker, TIC has not obtained a judgment against Becker, the insured, on the issue of liability, and hence TIC cannot maintain a direct action against Cincinnati, Becker's insurer.  Furthermore, since the Court granted Becker's partial summary judgment motion with respect to Count VII of the complaint, TIC cannot maintain a direct action against Cincinnati until TIC has a judgment against Becker.  TIC has not explained how common liability exists between Cincinnati and TIC; therefore, TIC cannot allege a claim for contribution against Cincinnati.  Similarly, TIC has not explained how it can assert a claim against Cincinnati for subrogation when TIC has not paid any benefits to Knutson. The Court concludes that TIC's claims for equitable contribution, contribution or subrogation against Cincinnati are hypothetical at best, and therefore TIC cannot allege an injury in fact sufficient to meet the constitutional requirements of standing.  Since TIC cannot allege facts sufficient to satisfy the standing requirements, TIC does not have standing to allege any of the claims in Count VII against Cincinnati.  Therefore, Cincinnati's motion for partial summary judgment should be granted with prejudice with respect to Count V, and granted without prejudice as to Count VII.

## IV.    RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Becker & Becker Stone Co.'s Motion for Partial Summary Judgment [#48] and Cincinnati Insurance Co.'s Motion for Partial Summary Judgment [#56] be **GRANTED**. Count VII should be dismissed without prejudice as to Becker and Cincinnati, and Count V should be dismissed with prejudice as to Cincinnati.


DATED: June 22, 2006                           *s/ Franklin L. Noel*
                                               FRANKLIN L. NOEL
                                               United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 12, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 12, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.